Eugene Killian, Jr.
Virginia A. Nairooz
**THE KILLIAN FIRM, P.C.**
Tindall Executive Office Suites
107 Tindall Road
Middletown, New Jersey 07748
732-912-2100
ekillian@tkfpc.com
vnairooz@tkfpc.com
*Attorneys for Princeton*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRINCETON LOGISTICS GROUP, LLC, | Civil Action No. |
| *Plaintiff,* | |
| v. | COMPLAINT |
| PATRICK LOUIS GROUP INCORPORATED, | |
| *Defendant.* | |

Plaintiff Princeton Logistics Group, LLC ("Princeton"), with its principal place of business at 300 Carnegie Center, Suite 150, Princeton, New Jersey 08540 ("Princeton") for its Complaint against Defendant Patrick Louis Group Incorporated ("Patrick Louis") alleges as follows:

1

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because Princeton's claims arise under the Lanham Act, including 15 U.S.C. §§ 1125(a) and 1117.

2. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States. Princeton is a Delaware limited liability company with its principal place of business in New Jersey. Upon information and belief, Patrick Louis is a Tennessee corporation with its principal place of business in Tennessee.

3. This Court has supplemental jurisdiction over Princeton's related state-law claims, including New Jersey common-law trademark infringement, unfair competition, and tortious interference, under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as Princeton's federal claims.

4. This Court has authority to declare the rights and other legal relations of the parties under 28 U.S.C. §§ 2201 and 2202.

5. This Court has personal jurisdiction over Patrick Louis because Patrick Louis has purposefully transacted business directed at New Jersey, has caused injury to Princeton in New Jersey, and the claims asserted in this action arise out of

or relate to Patrick Louis's contacts with New Jersey. The exercise of personal jurisdiction over Patrick Louis is therefore consistent with due process and New Jersey Court Rule 4:4-4.

6.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Princeton resides in this District and has its principal place of business in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Patrick Louis transacted business directed at New Jersey and caused harm in this District.

## THE PARTIES

7.    Princeton is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 300 Carnegie Center, Suite 150, Princeton, New Jersey 08540.

8.    For diversity purposes, Princeton is a citizen of the State of New Jersey.

9.    Patrick Louis is a corporation organized under the laws of the State of Tennessee, with its principal place of business in Nashville, Tennessee.

10.    For diversity purposes, Patrick Louis is a citizen of the State of Tennessee.

3

## GENERAL ALLEGATIONS

### A. Princeton's Business and the PLG Mark

11.  Princeton is a logistics and transportation company formed in 2020 that has continuously operated in the logistics industry since that time.

12.  Since 2020, Princeton has continuously and exclusively used the name and mark "PLG" in commerce in connection with its logistics and transportation services, including middle mile transport, cross-dock services, air cargo, e-commerce logistics, warehousing-related services, and expedited truck services.

13.  Princeton's use of "PLG" has included operation through PLG Corp (2020), Princeton Logistics Group, LLC (2020), PLG Middle Mile Transport LLC (2023), and under the DBA name PLG Air Cargo.

14.  Princeton holds FMCSA registration MC-1106008 and USDOT number 3421250 associated with its PLG-branded operations and has used the domains plgaircargo.com and princetonlogistics.group and the @plgaircargo.com email domain in connection with its business.

15.  Through its continuous use of the "PLG" name and mark since 2020, Princeton has developed substantial market recognition and goodwill in the logistics and transportation industry.

4

**B. Princeton's Advertising Investment and Industry Presence**

16. Since 2020, Princeton has invested more than $120,000 per year in advertising and market development to build the PLG brand. That investment includes expenditures on trailer wraps, trade group memberships, social media promotion, print advertising, and promotional items, including approximately $27,000 annually on LinkedIn promotion and professional visibility.

17. Princeton has marketed its PLG-branded services to customers, carriers, brokers, and other industry participants, and has developed industry recognition through membership in AEMCA, RACCA, ACI, and the JFK Air Cargo Association.

18. Because of its continuous operations, industry participation, and advertising expenditures, Princeton has built substantial goodwill and name recognition in the PLG designation within the markets in which it operates.

**C. Patrick Louis's Principal's Employment and Affiliation Discussions with Princeton**

19. The principal of Patrick Louis approached Princeton and engaged in active discussions concerning possible employment, a possible affiliation, and the possibility of paying to become part of Princeton.

20. During those discussions, Princeton shared information concerning its business operations and market position, and the principal of Patrick Louis

5

learned of Princeton's customers, preferred lanes, vendor relationships, and carrier contacts.

21. The discussions did not result in the principal of Patrick Louis becoming employed by or otherwise affiliated with Princeton.

22. Patrick Louis's principal effectively used Princeton as an entry point into the logistics industry, and the relationships he is leveraging today were, in large part, developed through his association with Princeton.

**D. Patrick Louis's Bad-Faith Formation and Adoption of PLG**

23. Upon information and belief, Patrick Louis initially launched its business under the name "PLG Warehouse" or "PLG Warehousing." Only after Princeton's counsel raised the issue of name infringement with Patrick Louis's counsel did Patrick Louis attempt to reframe the enterprise by registering with the FMCSA as Patrick Louis Group Incorporated DBA PLG — a rebranding that did not cure the infringement because it retained the identical "PLG" designation as Patrick Louis's operative trade name. Patrick Louis was formed in 2024, more than four years after Princeton began using PLG, and its FMCSA registration is under MC-1695290 and USDOT number 4339373, with a listed address of 159 4th Ave N, Suite 100, Nashville, Tennessee.

24. After its formation, Patrick Louis adopted and used the designation "PLG Warehouse" and the abbreviation "PLG" standing alone in connection with

logistics and supply chain services, including through its website at plgwarehouse.com and a LinkedIn page branded simply as "PLG." Patrick Louis is also listed on DAT, a widely used load board in the trucking and freight industry, simply as "PLG," with plgwarehouse.com as its associated domain, causing carriers who encounter the listing to reasonably assume a connection to Princeton.

25. Patrick Louis's LinkedIn page and website advertise services including middle mile, warehousing, cross-docking, final mile, logistics consulting, and supply chain consulting. These services overlap directly with Princeton's PLG-branded offerings. A screenshot of Patrick Louis's LinkedIn page, as it appeared at the time of filing, is reproduced below:



26. Patrick Louis adopted the PLG name and designation with knowledge of Princeton's prior use, having learned of Princeton's business, customers, relationships, and market presence through the discussions described above.

27. Upon information and belief, Patrick Louis does not operate an actual physical warehousing facility, making the name "PLG Warehouse" misleading as to the nature and capabilities of its services.

28. Princeton demanded in writing that Patrick Louis permanently cease all use of "PLG," "PLG Warehouse," and any confusingly similar designation in

connection with logistics-related services, including in domain names, social media, trade names, DBAs, entity names, websites, marketing materials, email addresses, signage, vehicles, and business registrations, and warned that any variation incorporating PLG would not cure the problem. Patrick Louis has failed and refused to comply.

## E. Actual Marketplace Confusion

29.    After Patrick Louis began using PLG-based branding, actual confusion arose in the marketplace.

30.    Princeton has experienced multiple instances in which shared customers, carriers, and industry contacts either assumed that Princeton and Patrick Louis were affiliated or questioned whether the two companies were connected. Princeton has documented specific examples of such confusion involving identified customers and industry partners, including Steel Lion, MAP, and UNIUNI, each of which has a commercial relationship with Princeton and either confused the two companies or believed there was some affiliation between them. Princeton has also encountered confusion among carriers who see "PLG Warehouse" on DAT and reasonably assume it is connected to Princeton.

31.    The confusion occurred in the same logistics and transportation market in which both companies solicit business, after Patrick Louis adopted the PLG

9

name and while it was offering overlapping services under PLG-based branding.

## F. Princeton's Damages

32.   As a result of Patrick Louis's conduct, Princeton has sustained approximately $110,900 in lost or confused business during 2025 and approximately $76,200 year-to-date in 2026.

33.   In addition to those economic losses, Princeton has suffered harm to the goodwill and market recognition it developed through years of use and promotion of the PLG name, including damage to customer relationships, carrier relationships, and industry goodwill.

## G. The Parallel Debt Dispute and Patrick Louis's Escalation

34.   A separate business payment dispute exists between Princeton and Patrick Louis Group concerning invoices submitted by Patrick Louis Group. Counsel for Patrick Louis, Braden Shaw of Bryan Cave Leighton Paisner, has asserted that Princeton owes at least $117,000 under invoices with 30-day terms that are more than 250 days past due, and has threatened to file a bond claim and to involve additional parties.

35.   Princeton disputes both the full amount claimed and any assertion that it is in default. Princeton has paid more than $350,000 toward the claimed balance, continues to remit $2,000 per week into escrow, and has advised Patrick Louis

that approximately 75% of the balance has been satisfied with the remainder to be paid over a 58-week structure. Patrick Louis has accepted those payments throughout.

36. The payment dispute did not give Patrick Louis permission to use the PLG name or any PLG-based branding in the marketplace.

## H. Irreparable Harm and Need for Preliminary Injunctive Relief

37. Patrick Louis continues to use PLG-based designations in connection with logistics and supply chain services, causing ongoing confusion among customers, carriers, and industry contacts and threatening Princeton's ability to control its brand identity, customer relationships, and the goodwill it has built through continuous use, industry participation, and substantial annual advertising expenditures.

38. The harm caused by continuing marketplace confusion is ongoing and irreparable. Money damages alone cannot fully restore lost control over Princeton's brand identity and goodwill while the confusing use continues, and absent immediate court intervention Princeton will continue to suffer ongoing injury.

# COUNT I

# FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

## (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

39.   Princeton incorporates by reference and realleges all preceding allegations as though fully set forth herein.

40.   Princeton brings this claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), based on Patrick Louis's use in commerce of "PLG" and confusingly similar designations in connection with logistics, transportation, supply-chain, and related services.

## A. Patrick Louis's Use in Commerce

41.   Patrick Louis has used "PLG" in interstate commerce to identify and promote its services through its FMCSA registration as MC-1695290 DBA PLG, its website at plgwarehouse.com, its LinkedIn presence branded simply as "PLG," and other online and customer-facing materials. This constitutes commercial use in interstate commerce within the meaning of 15 U.S.C. § 1125(a).

## B. Validity and Protectability of Princeton's Mark

42.   Princeton owns prior common-law rights in the "PLG" mark as used in connection with logistics and transportation services. Although unregistered,

the mark is valid and protectable because it has acquired distinctiveness and secondary meaning through continuous and exclusive use since 2020.

43.    Through continuous use since 2020, approximately $50,000 in annual advertising, and active industry participation, Princeton has built substantial goodwill and source-identifying significance in the "PLG" mark among customers, carriers, brokers, and other logistics industry participants. The relevant consuming public has come to recognize "PLG" as identifying Princeton as the source of logistics and transportation services, rendering the mark distinctive and protectable under 15 U.S.C. § 1125(a).

## C. Princeton's Priority of Use

44.    Princeton first used "PLG" in commerce in 2020 through PLG Corp and Princeton Logistics Group, LLC, and has used the mark continuously and exclusively in connection with logistics and transportation services from 2020 through the present, including through PLG Middle Mile Transport LLC beginning in 2023.

45.    Patrick Louis was apparently formed in 2024, more than four years after Princeton's first use of the "PLG" mark in commerce. Princeton therefore holds senior rights in the mark, and Patrick Louis's later use is junior and subordinate to Princeton's rights.

13

**D. Likelihood of Confusion**

46.  Patrick Louis's use of the identical acronym "PLG" and "PLG Warehouse" is likely to cause confusion, mistake, and deception as to the affiliation, connection, sponsorship, approval, or origin of Patrick Louis's services in violation of 15 U.S.C. § 1125(a)(1)(A).

47.  The marks are identical in their dominant portion. The parties offer the same or highly similar services to the same customer universe (shippers, carriers, freight brokers, and other logistics participants) through overlapping channels including FMCSA registration, internet marketing, and social media. Ordinary purchasers are therefore likely to believe that Patrick Louis is affiliated with, sponsored by, or part of Princeton.

48.  Actual confusion has already occurred in the marketplace, strongly confirming the likelihood of confusion. Both parties' simultaneous FMCSA registration under "PLG" for identical service offerings intensifies the risk that customers, carriers, brokers, and regulators will assume a connection between the businesses.

49.  Princeton had used "PLG" for more than four years before Patrick Louis adopted it. Under the applicable Lapp factors in the Third Circuit, the relevant factors overwhelmingly favor Princeton.

14

## E. Actual Marketplace Confusion

50.    Patrick Louis's use of "PLG" has already caused actual confusion. Named customers and industry partners, including Steel Lion, MAP, and UNIUNI, have confused the two companies or believed there was some affiliation between them. Carriers on the DAT load board have similarly assumed a connection between "PLG Warehouse" and Princeton Logistics Group.

51.    Patrick Louis's use of "PLG Warehouse" is additionally misleading because it suggests the existence of a physical warehousing facility that, upon information and belief, does not exist, further deceiving customers about the nature and source of Patrick Louis's services.

## F. Intentional and Bad-Faith Adoption

52.    Patrick Louis's adoption of "PLG" was intentional and in bad faith. Before launching its competing business, Patrick Louis's principal was in active discussions with Princeton about potential employment, affiliation, and paying to become part of Princeton, during which he learned of Princeton's operations, customers, lanes, vendors, and the goodwill associated with the "PLG" name. After acquiring that knowledge, Patrick Louis's principal launched a competing logistics business under the identical acronym, using the PLG name and perceived affiliation as a shortcut to establish credibility in the market. Further evidencing bad faith, Patrick Louis initially launched

15

under the name "PLG Warehouse" and only rebranded to "Patrick Louis Group DBA PLG" after Princeton's counsel raised the issue of name infringement, a rebranding that retained the identical PLG designation and therefore did not cure the infringement.

53. Patrick Louis's continued use of "PLG" despite Princeton's demands and warning that any variation incorporating "PLG" would not cure the infringement further evidences willfulness and bad faith, rendering this an exceptional case supporting enhanced damages, disgorgement of profits, and attorneys' fees under 15 U.S.C. § 1117.

## G. Injury and Entitlement to Relief

54. Patrick Louis's acts have injured and continue to injure Princeton by impairing the distinctiveness of the "PLG" mark and damaging Princeton's brand identity, customer goodwill, and commercial reputation. Princeton has sustained approximately $110,900 in lost or confused business in 2025 and approximately $76,200 year-to-date in 2026, in addition to damages to goodwill. Patrick Louis's ongoing use creates continuing and irreparable harm that cannot be fully remedied by monetary damages alone.

55. By reason of the foregoing, Patrick Louis is liable under 15 U.S.C. § 1125(a), and Princeton is entitled to injunctive relief, damages, disgorgement of profits,

enhanced relief, attorneys' fees under 15 U.S.C. § 1117, costs, and such other relief as the Court deems just and proper.

## COUNT II

## COMMON-LAW TRADEMARK INFRINGEMENT

56. Princeton incorporates by reference and realleges all preceding allegations as though fully set forth herein.

57. Princeton brings this Count for common-law trademark infringement under New Jersey law based on Patrick Louis's unauthorized use of the PLG mark.

## A. Valid, Enforceable Common-Law Rights in the PLG Mark

58. Since at least 2020, Princeton has continuously, exclusively, and publicly used "PLG" in connection with logistics and transportation services, building valid and enforceable common-law trademark rights under New Jersey law through sustained use, approximately $120,000 in annual advertising and market development, and widespread market recognition.

59. Princeton has used the PLG mark through PLG Corp, Princeton Logistics Group, LLC, and PLG Middle Mile Transport LLC, consistently presenting PLG as the source identifier for its logistics-related services. Through those efforts, Princeton has developed valuable goodwill and acquired valid and

17

enforceable common-law rights in PLG for logistics, transportation, and related services.

## B. Priority and Senior Rights

60. Princeton began using PLG in commerce in 2020, well before Patrick Louis was apparently formed in 2024. Princeton's use has been continuous through the present and has never been abandoned. Princeton therefore holds senior priority and superior common-law rights in the mark as against any later user, including Patrick Louis.

## C. Distinctiveness and Secondary Meaning

61. Through multi-year use, sustained annual advertising, and ongoing market presence, PLG has come to identify Princeton and Princeton's services in the minds of customers, carriers, industry associations, and other trade contacts. Princeton's participation in AEMCA, RACCA, ACI, and the JFK Air Cargo Association has further reinforced that marketplace recognition. As a result, PLG has acquired distinctiveness and secondary meaning and functions as a protectable common-law trademark identifying Princeton's services.

## D. Patrick Louis's Unauthorized Use of the Identical Mark in Commerce

62. Patrick Louis has adopted and used "PLG Warehouse" and "PLG" standing alone, without Princeton's consent, through its FMCSA registration, website at plgwarehouse.com, and LinkedIn presence, to market and offer logistics,

warehousing, middle-mile, cross-dock, final-mile, and related services that overlap directly with Princeton's PLG-branded offerings.

63.   Patrick Louis adopted PLG after its principal had active discussions with Princeton about potential employment or affiliation, giving Patrick Louis actual knowledge of Princeton, Princeton's business, and Princeton's use of PLG before Patrick Louis adopted the same acronym for overlapping services.

**E. Likelihood of Confusion and Actual Confusion**

64.   Patrick Louis's use of the identical PLG acronym for the same or closely related services to the same customer, carrier, and industry-contact universe creates a substantial likelihood of confusion as to source, sponsorship, affiliation, connection, or approval. The likelihood is especially strong because the parties operate in the same industry, target overlapping customers and carriers, and use the same three-letter designation as the operative source identifier.

65.   Patrick Louis's addition of the word "Warehouse" does not avoid confusion because the dominant element of Patrick Louis's designation is the identical PLG mark, and consumers are likely to focus on that shared acronym. Princeton has already experienced actual confusion: multiple shared customers, carriers, and industry contacts have assumed or specifically questioned whether Patrick Louis is affiliated with or part of Princeton.

19

66. Patrick Louis's use of "PLG Warehouse" is also independently misleading because it communicates the existence of a physical warehousing facility that, upon information and belief, does not exist. Patrick Louis's conduct has damaged and, unless enjoined, will continue to damage Princeton by impairing PLG's distinctiveness, interfering with customer relationships, eroding goodwill, and causing loss of control over Princeton's reputation.

## COUNT III

## UNFAIR COMPETITION — NEW JERSEY COMMON LAW

67. Princeton incorporates by reference and realleges all preceding allegations as though fully set forth herein.

68. This Count is brought under New Jersey common law prohibiting unfair competition, including passing off, misappropriation of trade identity and goodwill, and deceptive business practices likely to cause confusion as to source, sponsorship, or affiliation.

## A. Appropriation of Princeton's Established Trade Name and Goodwill

69. Since at least 2020, Princeton has continuously and exclusively used "PLG" in connection with logistics, transportation, and related services, and through that prior use has developed protectable common-law rights, valuable goodwill, and marketplace recognition in the PLG name. Princeton invested

20

approximately $120,000 annually to build that brand, causing customers, carriers, and industry participants to associate "PLG" with Princeton as the source of logistics and transportation services.

70.   Patrick Louis was formed in or about 2024, after Princeton had already established its PLG identity and goodwill. Before launching the competing business, Patrick Louis's principal had active discussions with Princeton about employment, affiliation, or payment to become part of Princeton, through which he became aware of Princeton's business identity, brand, market position, and industry relationships.

71.   After acquiring that knowledge, Patrick Louis adopted "PLG Warehouse" and "PLG" standing alone to identify competing logistics and supply chain services, conduct that was not coincidental or innocent. By using the identical dominant designation in the same field of commerce, Patrick Louis engaged in passing off and misappropriation of Princeton's commercial identity and improperly traded on the goodwill Princeton had built through years of prior use and investment.

**B. Likelihood of Confusion and False Designation of Affiliation or Source**

72.   Because Patrick Louis uses "PLG" and "PLG Warehouse" in connection with overlapping services, customers, carriers, and industry participants are likely to believe, and in fact have believed that Patrick Louis is affiliated with,

sponsored by, or otherwise connected to Princeton. Princeton has experienced actual marketplace confusion, with shared customers, carriers, and industry contacts, assuming or questioning whether the two companies are affiliated or the same enterprise.

73. Patrick Louis's conduct constitutes unfair competition under New Jersey common law because it falsely designates the source, affiliation, or sponsorship of Patrick Louis's services and causes the market to mistake Patrick Louis's competing business for Princeton's, or to believe the two are connected when they are not. Princeton has expressly notified Patrick Louis that continued use of any PLG variation will not cure the deception, and Patrick Louis has refused to stop.

## C. Deceptive and Misleading Trade Practices

74. Patrick Louis has marketed its services under "PLG Warehouse," communicating to customers and the market that Patrick Louis operates or is associated with an actual warehousing facility. Upon information and belief, no such facility exists. This misrepresentation is likely to influence customer and carrier decisions in the logistics market, where warehousing capacity and related infrastructure are important to service selection. By holding itself out as "PLG Warehouse" without the implied facility existing, and by combining that deceptive name with Princeton's established PLG identifier, Patrick Louis

22

has engaged in deceptive trade practices that mislead the market and unfairly divert commercial opportunities from Princeton.

## D. Resulting Harm to Princeton

75. As a direct result of Patrick Louis's unfair competitive conduct, Princeton has suffered loss of business opportunities, injury to goodwill and commercial reputation, disruption of customer and carrier relationships, and quantifiable economic harm of <u>at least</u> $110,900 in 2025 and $76,200 year-to-date in 2026, in addition to damages to goodwill. Unless restrained, Patrick Louis's continued conduct will cause additional irreparable and compensable harm for which legal remedies alone are inadequate.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
## AND PROSPECTIVE ECONOMIC ADVANTAGE

76. Princeton incorporates by reference and realleges all preceding allegations as though fully set forth herein.

77. This Count is brought under New Jersey common law for tortious interference with business relations and prospective economic advantage.

## A. Existing and Prospective Business Relationships

78. Since at least 2020, Princeton has maintained established commercial relationships with customers, carriers, freight brokers, shippers, vendors, and

23

other industry contacts in the logistics and transportation industry, and had a reasonable expectation of continued economic benefit from repeat shipments, recurring carrier engagements, brokered loads, vendor support, and future business from that same network.

79. Princeton also had a reasonable expectation of prospective economic advantage from customers, carriers, and industry contacts who recognized the PLG brand as identifying Princeton's services and who were likely to continue placing or referring business with Princeton.

**B. Patrick Louis's Knowledge of Princeton's Relationships and Expectancies**

80. Patrick Louis's principal obtained actual and specific knowledge of Princeton's customer relationships, carrier networks, preferred lanes, vendor contacts, and operational structure during the employment and affiliation discussions with Princeton. That knowledge provided Patrick Louis with a detailed roadmap to Princeton's existing and prospective business relationships and commercial opportunities. Patrick Louis therefore knew, before adopting the PLG name, that Princeton had established business ties and economic expectancies in the same market in which Patrick Louis later began operating.

## C. Intentional and Malicious Interference

81.    After acquiring that knowledge, Patrick Louis intentionally adopted the identical PLG designation, including PLG Warehouse and PLG standing alone, despite knowing it was Princeton's established trade name in the same industry. Upon information and belief, Patrick Louis then used Princeton's customer, carrier, and industry-contact information to operate in the same market and direct business to itself that Princeton reasonably expected to obtain. Patrick Louis's conduct was undertaken intentionally and without justification, in disregard of Princeton's prior rights, established relationships, and known business expectancies, constituting malicious interference under New Jersey law.

## D. Improper Means

82.    Patrick Louis employed improper means by adopting Princeton's trade identity in bad faith after learning about Princeton's business under the guise of potential employment or affiliation, and by misappropriating competitively sensitive information concerning Princeton's customers, carriers, vendors, lanes, and operations. Patrick Louis also created marketplace confusion by using the identical PLG designation -- confusion that was reasonably foreseeable and, upon information and belief, intended to divert business opportunities away from Princeton. The use of "PLG Warehouse" further

25

enhanced this deception by falsely suggesting the existence of a warehousing facility. Even after Princeton's demands, Patrick Louis refused to cease, further evidencing the knowing and improper nature of the interference.

**E. Causation and Damages**

83.  As a direct result of Patrick Louis's interference, Princeton has lost business opportunities with existing and prospective customers and carriers, suffered disruption and damage to its established commercial relationships, sustained quantifiable economic harm of approximately $110,900 in 2025 and $76,200 year-to-date in 2026, and incurred reputational injury, loss of goodwill, and attorney-related expenses. Absent injunctive relief, Patrick Louis's ongoing conduct will continue to cause immediate and irreparable harm for which monetary damages alone are inadequate.

## COUNT V

## DECLARATORY JUDGMENT — NO DEBT OWED TO DEFENDANT

84.  Princeton incorporates by reference and realleges all preceding allegations as though fully set forth herein.

85.  This Count is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, for a declaration of the rights and legal relations of the parties concerning Patrick Louis's claim that Princeton owes unpaid invoice amounts.

## A. Actual and Justiciable Controversy

86.  An actual, present, and justiciable controversy exists: Patrick Louis's counsel has asserted that Princeton owes at least $117,000 on invoices with 30-day terms that are more than 250 days past due, and has filed a bond claim in an effort to involve additional parties. These assertions and threats place Princeton in immediate uncertainty regarding its legal obligations and potential exposure to collection proceedings, and present a live controversy appropriate for judicial resolution under 28 U.S.C. § 2201.

## B. Dispute as to the Alleged Debt and Default

87.  Princeton disputes Patrick Louis's contention that the full $117,000 remains due and owing. Princeton has paid more than $350,000 toward the overall balance, Patrick Louis has consistently accepted those payments. Princeton has advised Patrick Louis that approximately 75% of the balance is satisfied and the remainder will be paid over a 58-week structure. Patrick Louis's acceptance of substantial prior payments, together with the parties' ongoing payment arrangement, precludes Patrick Louis from characterizing Princeton as in default for the full amount now claimed.

88.  Princeton seeks a declaration that it does not owe the full $117,000 alleged, that it is not in default as alleged by Patrick Louis, and that any remaining balance is governed by the payment arrangement Patrick Louis accepted.

27

## C. Setoff, Offset, and Equitable Defenses

89.   To the extent the Court determines any balance remains owing, Princeton alleges that any such liability is subject to setoff, offset, recoupment, and other equitable defenses arising from Patrick Louis's wrongful conduct alleged herein. The economic harm Princeton has suffered from Patrick Louis's trademark infringement, unfair competition, and tortious interference exceeds any remaining balance Patrick Louis contends is owed, such that any recoverable amount must be reduced or eliminated accordingly.

90.   Princeton seeks a declaration that, if any unpaid balance exists, Patrick Louis is not entitled to recover it without accounting for Princeton's defenses and the damages Patrick Louis's own conduct has caused.

## D. Necessity and Efficiency of Declaratory Relief

91.   Absent a declaration in this action, Patrick Louis is likely to initiate a separate state-court collection proceeding to recover the same alleged $117,000, creating duplicative litigation, risking inconsistent rulings, and forcing the parties to expend unnecessary resources litigating intertwined issues in multiple forums. The debt dispute arises from the same course of dealings that underlies Princeton's claims herein, and resolving it in this action is the most efficient and equitable means of adjudicating the full controversy between the parties.

## PRAYER FOR RELIEF

WHEREFORE, Princeton Princeton Logistics Group, LLC respectfully demands judgment in its favor and against Patrick Louis Patrick Louis Group Incorporated, and requests that this Court grant the following relief:

a.    A permanent injunction enjoining Patrick Louis Patrick Louis Group Incorporated, and its officers, directors, agents, employees, representatives, successors, assigns, and all persons or entities acting in concert or participation with it, from: (i) using "PLG," "PLG Warehouse," "PLG Warehousing," or any confusingly similar designation in connection with logistics, transportation, warehousing, freight, supply chain, or related services; (ii) operating any website, social media account, email account, or domain name incorporating "PLG" or any confusingly similar variation; and (iii) representing any affiliation, sponsorship, endorsement, or connection with Princeton Princeton Logistics Group, LLC.

b.    An Order requiring Patrick Louis to transfer all domain names incorporating "PLG," including plgwarehouse.com, and to remove all PLG branding from websites, social media pages, marketing materials, email addresses, signage, vehicles, invoices, stationery, and all other customer-facing or commercial materials.

29

c. An Order requiring Patrick Louis to update its FMCSA registration, including MC-1695290, to remove the "PLG" doing-business-as designation and any other reference suggesting affiliation with Princeton's PLG mark.

d. An Order requiring Patrick Louis to issue corrective communications, in a form approved by the Court, to customers, carriers, brokers, vendors, and industry contacts, stating clearly that Patrick Louis Group Incorporated is not affiliated with, sponsored by, or connected to Princeton Logistics Group, LLC or PLG Air Cargo.

e. An award of Princeton's actual and compensatory damages in an amount to be proven at trial, including but not limited to approximately $110,900 in lost or confused business during 2025 and approximately $76,200 year-to-date in 2026, together with additional lost sales, lost business opportunities, customer diversion, corrective advertising costs, and reputational injury proven at trial.

f. An award of Patrick Louis's profits pursuant to 15 U.S.C. § 1117(a) and applicable New Jersey law, in an amount to be proven at trial.

g. An award of enhanced damages, including treble damages as permitted by 15 U.S.C. § 1117(b), based on Patrick Louis's intentional, willful, and bad-faith infringement and unfair competition.

h. An award of damages for injury to the goodwill associated with the PLG mark, in an amount to be proven at trial.

30

i.    An award of Princeton's reasonable attorneys' fees, costs, and disbursements under 15 U.S.C. § 1117(a) on the grounds that this is an exceptional case.

j.    A declaratory judgment that: (i) Princeton does not owe Patrick Louis $117,000 in full; (ii) Princeton is not in default; (iii) any remaining balance is governed by the payment arrangement Patrick Louis accepted and is not immediately due; and (iv) any remaining obligation is subject to setoff against Princeton's damages claims.

k.    A preliminary injunction, pending final judgment, immediately restraining Patrick Louis's use of the PLG mark and confusingly similar designations.

l.    Pre-judgment and post-judgment interest as allowed by law.

m.    Such other and further legal or equitable relief as the Court deems just and proper.

31

## JURY DEMAND

Princeton demands trial by jury with respect to all issues so triable as of right.

Date: June 4, 2026                              **THE KILLIAN FIRM, P.C.**

                                                *Attorneys for Princeton*

                                                By: /s/ Eugene Killian, Jr.

## **RULE 11.2 DECLARATION**

EUGENE KILLIAN, JR., of full age, declares as follows:

1. I have been a member in good standing of the Bar of the State of New Jersey and of the bar of this Court since 1990. I am the Principal Member of The Killian Firm, P. C., the attorneys for plaintiff in this action.

2. To the best of my knowledge, information and belief, the matter in controversy is not the subject of any other action pending in any Court, or of any pending arbitration or administrative proceeding.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 4, 2026.

*Eugene Killian, Jr.*

EUGENE KILLIAN, JR.

33